COMMONWEALTH *vs.* VASUDEVAN PILLAI.

No. 03-P-326.

Norfolk. December 8, 2003. - August 16, 2004.

Present: ARMSTRONG, C.J., BECK, & CYPHER, JJ.

Further appellate review granted, 442 Mass. 1110 (2004).

*Child Abuse. Indecent Assault and Battery. Practice, Criminal,* Trial of indictments together, Severance. *Evidence,* Prior misconduct, Other offense.

A District Court judge erred in a criminal case by allowing the Commonwealth's motion for joinder of charges of indecent assault and battery on a child under fourteen involving separate acts perpetrated against two different children and occurring four or five months apart, where the judge could not properly conclude that the alleged bad acts against the respective children were related within the meaning of Mass.R.Crim.P. 9(a)(1) in that they arose out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan. [604-608]

COMPLAINTS received and sworn to in the Dedham Division of the District Court Court Department on April 13, 2000, and July 18, 2000.

A pretrial motion for joinder was heard by *Lynda M. Connolly,* J., and the cases were tried before her.

*Michael R. Schneider* for the defendant.

*James A. Reidy,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, C.J. The defendant was convicted of eight counts of indecent assault and battery on a child under fourteen; six involving a group of incidents occurring on a single day against one child, and the other two involving a separate incident allegedly occurring four or five months earlier with a different child. With some hesitation, borne principally of the infrequency of instances in our decisional law where convictions have been reversed for improper joinder, we have come to the conclusion that the judge erred in this case by allowing the Com-

monwealth's motion for joinder of the charges involving the different victims.

The general rule is that "related cases" should be joined for trial unless joinder is not in the best interests of justice. The Rules of Criminal Procedure define "related offenses" as those "based on the same criminal conduct or episode or [which] arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979). See discussion in *Commonwealth* v. *Sullivan*, 436 Mass. 799, 802-805 (2002). "[T]he propriety of join[der] . . . turns, in large measure, on whether evidence of the other . . . offenses would have been admissible at a separate trial on each indictment." *Commonwealth* v. *Mamay*, 407 Mass. 412, 417 (1990), citing *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981). Such evidence is inadmissible to prove the propensity of the defendant to commit crimes of a type, *ibid.*; but it can be used to "show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986).

Prior reported decisions sanctioning joinder for trial of abuse charges involving different victims (or, alternatively, use of evidence of abuse against a different victim) have hewed to those guidelines. See, e.g., *Commonwealth* v. *Gallison, supra* at 671-673 (parents of two young children abused both repeatedly over the same time period); *Commonwealth* v. *King*, 387 Mass. 464, 469-473 (1982) (deviant sexual abuse of young siblings during same time period); *Commonwealth* v. *Pope*, 392 Mass. 493, 502-503 (1984) (defendant assaulted four women attending convention during one four-hour period); *Commonwealth* v. *Helfant, supra* at 226-228 (evidence admissible of physician's prior use of Valium injections to weaken female patients' resistance to abuse); *Commonwealth* v. *Mamay, supra* at 416-417 (defendant, a gynecologist, employing unorthodox examination positions, fondled patients on the examination table); *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995) (karate instructor teaching adolescent boys that part of becoming a Ninja warrior involves ritual of participation in intimate relations with instructor). Apart from the cases involving an unusual

or distinctive modus operandi (like *Helfant, Mamay* and *Feijoo*), the cases in which joinder was approved often emphasize proximity in time as a critical element. Thus, in *Gallison*, the court reasoned that the abuse of the younger brother of the victim named in the indictment a nine year old female was admissible because it was similar in pattern and occurred over the same time period, thus "form[ing] a temporal and schematic nexus with the treatment of [the sister]." *Commonwealth* v. *Gallison, supra* at 673. The *King* decision, recognizing that it would be the first case in which that court permitted "evidence of a defendant's sexual conduct with a child not named in the indictment [to be admitted] in an action charging a sexual offense against the named child" (*Commonwealth* v. *King, supra* at 471), emphasized that the evidence fit the "temporal and schematic nexus" formulation of *Gallison*; that is to say, "both children lived in the same house with the defendant, the sexual acts took place during the same time period, the victims were of similar age (both under ten), and the form of the sexual conduct (oral sex and use of the dog) was similar. These factors make this evidence distinguishable from the unconnected acts we excluded in [*Commonwealth* v.] *Welcome*, [348 Mass. 68, 70 (1964)]."[1] *Id.* at 472. The *King* decision reiterated that "evidence of a separate sexual act with another person is inadmissible if it is unconnected in time, place, or other relevant circumstances to the particular sex offense for which the defendant is being tried," *id.* at 470, citing *Welcome, supra* at 70.

As joined, the instant case involved thirteen year old classmates of the defendant's daughter, Anne,[2] who visited her and stayed overnight. The first to report improper activities to

---

[1] The *Welcome* case was a prosecution for the defendant's alleged indecent assault on a female child. The court reversed the conviction because the judge had admitted evidence that the defendant had previously assaulted other female children. "We invoke the rule that evidence of a distinct crime unconnected with that for which the defendant is indicted cannot be received. An exception to this rule is stated in *Commonwealth* v. *Machado*, 339 Mass. 713 [1959], where there was evidence of prior illicit sexual intercourse between the same parties. In the present case the testimony related to earlier misconduct by the defendant with other parties." *Commonwealth* v. *Welcome, supra* at 70-71.

[2] A pseudonym.

authorities was Kathy,[3] allegedly molested the night of December 23-24, 1999. Kathy reported that during the afternoon, the defendant, alone with her in a small room, first grabbed her breast, and after having her count money, touched her side and slid his hand to her buttocks, pulled her toward him, then held her briefly. Later he drove Kathy and Anne to a fast-food restaurant and during the drive reached into the backseat to grab Kathy's legs. At some point he gave her twenty dollars. Back at home, he pulled her into the bathroom, touched her (through her clothing) on her breast, vaginal area, and buttocks, kissed her on the forehead, attempted to kiss her lips, then let her leave. That night, as Kathy was sleeping, fully clothed in the same bed with Anne, the defendant came in, woke her, and urged her without success to go downstairs with him. He then crawled on top of her three times, touching her breast and vaginal area. Kathy testified she could feel his penis through her clothing pressing against her buttocks. She disclosed these activities to her mother on December 24, but Kathy and her mother didn't approach authorities (first a school counselor, then the police) for several weeks.

The second complaint involved Rose,[4] a friend of Anne's, who had slept over at the Pillai house often. Rose alleged that on one night in either July or August (i.e., four or five months prior to the incidents involving Kathy) she awoke around 2:30 A.M. to find the defendant, smelling of alcohol, hovering over her and feeling her breasts through a bra and T-shirt she was wearing. Even though she protested, the defendant persisted for a time in trying to lift her T-shirt. He then sat in the room and watched her for a while, even after she rolled over. Rose testified she told Anne several days later, who promptly changed the subject. (Anne denied being told.) Sometime after winter break, Rose learned from Anne that Kathy was making accusations against the defendant. Rose then talked to Kathy, who, although a schoolmate, was not previously an acquaintance. Rose volunteered that she too had been subject to the defendant's advances. Kathy encouraged Rose to "come forward" and Rose

---

[3]Also a pseudonym.
[4]A pseudonym.

agreed.[5] Rose had not previously reported the events alleged, even to her family.

These cases should not have been joined for trial. Evidence of the defendant's conduct with Kathy would have been inadmissible in the case based on Rose's allegations; so too, evidence of his conduct with Rose, in the case based on Kathy's allegations. See *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994); *Commonwealth* v. *Jacobs*, 52 Mass. App. Ct. 38, 42-43 (2001). In contrast to evidence of earlier bad acts involving the same parties, which is often "relevant to show the probable existence of the same passion or emotion at the time in issue," *Commonwealth* v. *King*, 387 Mass. at 470, quoting *Commonwealth* v. *Bemis*, 242 Mass. 582, 585 (1922), evidence of bad acts "by the defendant toward a child other than the complainant . . . , to be admissible, must be closely related in time, place, and form of acts to show a common course of conduct by the defendant toward the two children so as to be logically probative." *Commonwealth* v. *Barrett*, *supra* at 794, citing the *King* and *Gallison* cases. "In other words, the conduct towards the children must form a 'temporal and schematic nexus' which renders the evidence admissible to show a common course of conduct regarding the two children." *Ibid.* See also *Commonwealth* v. *Cogswell*, 31 Mass. App. Ct. 691, 696 (1991) (defendant abusing stepdaughters repeatedly, inducing silence by identical threats); *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 283 (1992) (defendant, close family friend, in continuing pattern of sexual abuse of daughters from age nine on).

As the trial judge observed, there were many similarities between the alleged assaults against Kathy and Rose. The victims were both schoolmates of the defendant's daughter. Both were sleeping over at her house. Both were assaulted at roughly the same time at night, and the defendant's alleged advances in both cases consisted of fondling breasts, vaginal areas, and buttocks. "The alleged offenses and their circumstances were thus undoubtedly similar. . . in major respects.

---

[5]Rose testified: "Well, our conversation kind of consisted of well, it happened to me, too, I told her; so you're not alone. And then we became friends, and she asked me if I would come forward, and I said yes."

However, they were not 'related' within the meaning of Mass.R. Crim.P. 9(a)(1), unless the judge could conclude that they arose 'out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.' " *Commonwealth* v. *Sylvester,* 388 Mass. 749, 755 (1983).

The judge could not properly so conclude. The acts were plainly not a part of a single course of criminal conduct but rather were separate acts involving different victims four or five months apart. The acts were not connected together and were not part of a single scheme or plan. Nor did the evidence bring the case within the mold of the modus operandi, or pattern of conduct line of cases, such as *Helfant, supra; Mamay, supra; Feijoo, supra; Commonwealth* v. *Odell,* 34 Mass. App. Ct. 100, 103 (1993) (defendant stupefying numerous women with drugs and alcohol), or *Commonwealth* v. *Hanlon,* 44 Mass. App. Ct. 810, 819-821 (1998) (priest taking altar boys to ski lodge).[6] The defendant's acts with respect to Kathy and Rose did not exhibit any distinctive, identifying qualities such as those that are characteristic of the modus operandi or common pattern line of cases. To the contrary, his groping of breasts, vaginal areas, and buttocks, and trying to reach under clothing, are common to most indecent assault and battery cases. Compare *Commonwealth* v. *Brusgulis,* 406 Mass. 501, 506-507 (1990). Trying these two cases together, or admitting evidence of one in the other, would furnish evidence with no probative force other than to show the defendant's attraction to adolescent girls in others words, to show his propensity for committing the type of crime charged. This, all decisions agree, a court should not allow.

*Judgments reversed.*

*Verdicts set aside.*

---

[6]There is an extensive and useful discussion of the relationship between the "temporal and schematic" and the "common pattern" lines of cases in *Commonwealth* v. *Hanlon,* 44 Mass. App. Ct. at 816-821. See *Commonwealth* v. *Jacobs,* 52 Mass. App. Ct. at 39-47.