COMMONWEALTH *vs.* VASUDEVAN PILLAI.

Norfolk. February 8, 2005. - September 14, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Trial of indictments together, Severance, Instructions to jury, New trial, Assistance of counsel, Bill of particulars, Conduct of prosecutor, Argument by prosecutor. *Evidence,* Other offense, Corroborative evidence, Prior misconduct. *Constitutional Law,* Assistance of counsel. *Indecent Assault and Battery.*

A District Court judge did not abuse her discretion by joining for trial charges of indecent assault and battery on a child under fourteen involving separate acts perpetrated against two different children and occurring several months apart, where the record demonstrated the defendant's participation in two criminal episodes that, despite slight factual variations, were sufficiently related by a similarity in the method by which the defendant committed the various offenses, and where the defendant failed to meet his burden of demonstrating any compelling prejudice arising from the joinder. [179-184]

There was no support in the record of a criminal trial for the defendant's assertion that the judge abused her discretion by precluding the defendant from introducing certain evidence regarding the victims' biases or motives to fabricate their accusations or testimony at trial. [184-185]

A criminal defendant failed to demonstrate that he was entitled to a new trial based on certain actions of trial counsel that were not manifestly unreasonable [185-187], or based on any alleged prejudice arising from the Commonwealth's response to his motion for a bill of particulars, which contained a variance from the Commonwealth's case at trial that related entirely to a collateral matter [187-189].

Actions by a prosecutor at a criminal trial, although inappropriate, were not so prejudicial, either alone or in combination, as to have deprived the defendant of a fair trial. [189-191]

At the trial of complaints charging multiple counts of indecent assault and battery, the trial judge did not err in not instructing the jury sua sponte on specific unanimity regarding each alleged touching. [191-192]

Evidence at the trial of a complaint charging two counts of indecent assault and battery on a child under fourteen was sufficient to support only one count. [192-193]

A criminal defendant could not be sentenced under G. L. c. 275, § 18, to a term of community parole supervision for life, following this court's decision in *Commonwealth* v. *Pagan, ante* 161, 172-173 (2005), holding the relevant portions of that statute unconstitutional. [193-194]

COMPLAINTS received and sworn to in the Dedham Division of

the District Court Court Department on April 13, 2000, and July 18, 2000.

A pretrial motion for joinder was heard by *Lynda M. Connolly*, J., and the cases were tried before her as were certain posttrial motions.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James A. Reidy*, Assistant District Attorney, for the Commonwealth.

*Michael R. Schneider* for the defendant.

*Peter Onek*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

MARSHALL, C.J. In 2001, a District Court jury convicted the defendant on two complaints charging eight counts of indecent assault and battery on a child under fourteen years. One complaint charged six counts occurring against one child, and a separate complaint charged two counts allegedly occurring months earlier against a different child. On a consolidated appeal from the convictions and the denial of his motion for a new trial, the defendant contended that the trial judge erred by joining the two complaints for trial and by precluding him from introducing certain evidence. He also brought the claims of error he raised in his motion for a new trial. The Appeals Court reversed the judgments and set aside the verdicts. *Commonwealth* v. *Pillai*, 61 Mass. App. Ct. 603 (2004). We granted the Commonwealth's application for further appellate review. We affirm in part, reverse in part, and remand the case for resentencing.[1]

1. *Facts*. We summarize the facts in their light most favorable to the Commonwealth, reserving other details for discussion when relevant to the issues raised.

The defendant's daughter, Anne, was friends with the complainants, who were both thirteen years old on the relevant dates.[2] One day in July or August, 1999, Anne invited Rose to

---

[1] We acknowledge the amicus brief filed by the Committee for Public Counsel Services.

[2] As is our custom, we use pseudonyms as assigned by the Appeals Court for the minors involved.

spend the night at her house, which Rose had done before. Rose testified that, while she was sleeping next to Anne in a basement family room, she awoke between 3 and 4 A.M. to find the defendant "hovering" over her with his hands on her breasts squeezing her nipple. The defendant kept trying to lift her shirt, saying "Let me see, let me see," while assuring her that he would not "take [her] virginity." Rose awakened Anne, who quickly fell back to sleep. The defendant remained in the room for more than ten minutes, sitting on a couch watching Rose. Rose eventually fell back to sleep and went home immediately when she awoke in the morning. The only person Rose told about the incident was Anne, who changed the subject when Rose brought it up one week later.

On December 23, 1999, Anne invited another friend, Kathy, to spend the night at her house. Kathy testified that, while Anne was checking her email, the defendant pulled her close to him, with his hand on her waist, then "grabbed" her breast, "pulled" her nipple toward him, and placed his hand on her buttocks. Later, while driving to a restaurant for dinner, the defendant repeatedly reached behind his seat to feel Kathy's legs. Back at the house, when Kathy went to Anne's room to retrieve a pillow, the defendant tried to pull Kathy into a bathroom by "tugging" on her arm. Later, when the girls were walking to the basement family room, the defendant succeeded in pulling Kathy into a bathroom. There, he told her he would not do anything to her unless she wanted him to, stating, "I would never touch you here, here, or here," while in turn touching her upper breast, vaginal area, and buttocks for a few seconds each over her clothes. The defendant kissed Kathy and blocked the doorway, preventing her from leaving the bathroom, where they remained for some ten minutes.

Later that night, after Kathy and Anne had gone to bed the defendant followed a pattern of conduct similar to that which he used during Rose's sleepover. At 2:30 A.M., Kathy woke to find him shaking her feet, asking her to be quiet and to go downstairs with him. Kathy replied, "No. No. I want to go to sleep. I'm tired." She also called Anne's name "sort of loudly," but Anne did not wake up. The defendant pulled Kathy's arm and twisted it "like he was trying to pull [it] out of [its] socket." The

defendant then "crawled on top of" Kathy and put his arm around her. Over her bedclothes, the defendant touched Kathy's breast area three times and her vaginal area twice, with Kathy pushing his hand away each time. Kathy felt the defendant's penis pressing against her buttocks, and he tried to pull off her pajama bottoms. Kathy held the defendant's probing hand with one hand and covered her body with the other. The defendant remained with the girls for about thirty minutes before leaving the room, after which Kathy fell back to sleep.

The following day Kathy told her mother about the incident when they were driving away from the defendant's house; she described the other incidents to her mother in "bits and pieces" over the following week. Kathy and her mother reported the incidents to a guidance counsellor at her school. Anne told Rose about the accusations Kathy was making. Rose, who did not know Kathy, approached Kathy and told her that the defendant had also assaulted her during her earlier sleepover. Both girls reported the incidents to the district attorney's office, which issued two complaints of indecent assault and battery on a child under fourteen years against the defendant. See G. L. c. 265, § 13B. One complaint charged two counts with respect to the incident with Rose, and the other charged six counts with respect to the incidents with Kathy. A judge in the District Court allowed the Commonwealth's motion to join the complaints for trial, see Mass. R. Crim. P. 9, 378 Mass. 859 (1979), and denied the defendant's motion to reconsider the joinder.

Following a trial in the District Court, the jury returned guilty verdicts on all eight counts. The judge sentenced the defendant to serve four years in a house of correction, with one additional year suspended for seven years conditioned on the defendant's compliance with terms of probation. She also required the defendant to register as a sex offender pursuant to G. L. c. 6, §§ 178C-178P, and imposed community parole supervision for life pursuant to G. L. c. 265, § 45, and G. L. c. 275, § 18. The defendant filed a timely notice of appeal.

In August, 2002, represented by new counsel, the defendant moved for a new trial asserting several errors, which we discuss

below.[3] Following an evidentiary hearing, the motion judge, who was also the trial judge, denied the defendant's motion.[4] The Appeals Court consolidated the defendant's appeal from the denial with his direct appeal and set aside the verdicts, concluding that the judge should have denied the Commonwealth's motion for joinder. *Commonwealth* v. *Pillai*, 61 Mass. App. Ct. 603 (2004). We granted the Commonwealth's application for further appellate review.

2. *Discussion.* On direct appeal the defendant challenges the judge's joinder ruling. He also argues that she improperly precluded him from introducing evidence of the allegedly turbulent home lives of the complaining witnesses, in contravention of the defendant's rights to present a defense, to confront witnesses against him, and to due process. On his appeal from the denial of the motion for a new trial he argues ineffective assistance of trial counsel for failing to impeach the complainants, prejudice arising from variances between the bill of particulars provided by the Commonwealth and the evidence at trial, prosecutorial overreaching, prejudice arising from the judge's failure to issue a specific unanimity instruction sua sponte, and insufficiency of evidence to support a guilty verdict on the second count of Rose's complaint. We discuss each claim in turn before addressing the judge's imposition of community supervised parole for life as a component of the sentence.

a. *Joinder.* The defendant argues that the underlying offenses were not "related offenses" within the meaning of rule 9 (a) (1), or alternatively, that "the best interests of justice," rule 9 (a) (3), required separate trials. We conclude that the judge did not abuse her discretion by joining the complaints for trial.

The basic principles governing joinder of offenses are well settled in our law. Among those most relevant to the facts in this case are the following. First, the decision whether to join offenses for trial is a matter left to the sound discretion of the judge, see *Commonwealth* v. *Sullivan*, 436 Mass. 799, 803

---

[3]The delay in filing the motion for a new trial was attributable in part to problems with the tape recordings of the proceedings, which delayed preparation of the trial transcript and assembly of the consolidated record for appeal.

[4]The judge also denied the defendant's motion to stay execution of his sentence pending appeal.

(2002), and will not be reversed unless there has been "a clear abuse of discretion."[5] *Commonwealth* v. *Walker*, 442 Mass. 185, 199 (2004), quoting *Commonwealth* v. *Allison*, 434 Mass. 670, 679 (2001).

Second, to prevail on a claim of misjoinder, the defendant "bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." *Commonwealth* v. *Gaynor*, 443 Mass. 245, 260 (2005). For purposes of joinder, offenses are related "if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1). Factors a judge may consider in determining whether offenses are related include factual similarities, see *Commonwealth* v. *Ferraro*, 424 Mass. 87, 89-91 (1997), and closeness of time and space, see *Commonwealth* v. *Delaney*, 425 Mass. 587, 594 (1997), cert. denied, 522 U.S. 1058 (1998). Offenses are related if "the evidence in its totality shows a common scheme and pattern of operation that tends to prove" each of the complaints. *Commonwealth* v. *Feijoo*, 419 Mass. 486, 494-495 (1995). Where offenses are related, the judge "shall join the charges for trial" unless she "determines that joinder is not in the best interests of justice." Mass. R. Crim. P. 9 (a) (3).

Finally, the propriety of joining offenses for a single trial often turns on whether evidence of the other offenses would be admissible in separate trials on each offense. See, e.g., *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981). Of course, evidence of other criminal conduct may not be used to prove the propensity of the defendant to commit the charged offense,

---

[5]Although, in reviewing whether the offenses were properly joined, we have the advantage of the record of the trial and how the evidence was presented to the jury, the motion judge necessarily made her decision based primarily on facts alleged in the Commonwealth's memorandum supporting its motion to join the offenses for trial. Nevertheless, we review claims of misjoinder using the deferential abuse of discretion standard for the reason explicated by Justice Kaplan in *Commonwealth* v. *Jacobs*, 52 Mass. App. Ct. 38, 41 (2001): the imprecise language of Mass. R. Crim. P. 9, 378 Mass. 859 (1979), gives a judge "residual discretion" in its interpretation and application.

see, e.g., *id.*, but it may be admissible for other purposes, such as "to show a common scheme or pattern of operation." *Commonwealth* v. *Gaynor, supra.*

In reviewing the judge's exercise of discretion in a close case such as this, the test is not whether we would have made a different decision. Rather, we will uphold the judge's decision unless we are convinced that "no conscientious judge, acting intelligently, could honestly have taken the view [she] expressed." *Commonwealth* v. *Ira I.*, 439 Mass. 805, 809 (2003), quoting *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976). Viewing the judge's ruling under that deferential standard,[6] the facts here "demonstrate the defendant's participation in [two] criminal episodes that, despite slight factual variations, are sufficiently [related] to support the judge's decision to allow the Commonwealth's request for joinder." *Commonwealth* v. *Walker, supra* at 200. The defendant's argument that the offenses were not related because his alleged conduct during the two offenses varied in what he asserts are substantial ways is unpersuasive. See, e.g., *Commonwealth* v. *Ferraro, supra* at 89; *Commonwealth* v. *Mamay*, 407 Mass. 412, 417 (1990). Cf., e.g., *Commonwealth* v. *Zemtsov*, 443 Mass. 36, 43-44 (2004) (offenses related even where they occurred on different dates and involved different victims and criminal conduct). The judge properly focused on the similarities between the two offenses in their totality, rather than the differences. We cannot say that she abused her discretion by concluding that they were related, as we shall explain.

The judge could have reasoned that the offenses were related because they showed a common pattern of operation. See *Commonwealth* v. *Feijoo, supra.* Both complainants were thirteen year old girls who were away from their homes and dependent

[6]The Appeals Court did not address the standard of review on appeal on a challenge to a joinder ruling. It also did not have the benefit of three recent decisions in cases in which we rejected claims of misjoinder of offenses. We decided two cases after the Appeals Court decision in this case. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 259-263 (2005); *Commonwealth* v. *Zemtsov*, 443 Mass. 36, 42-45 (2004). We decided a third case, to which the Appeals Court decision contains no citation, shortly before the Appeals Court decision. See *Commonwealth* v. *Walker*, 442 Mass. 185, 199-201 (2004).

on the defendant for parental protection.[7] The defendant used the same method of access to the complainants and took advantage of their susceptibilities during each sleepover. In the middle of the night, at approximately the same hour, he awakened each girl when she likely was most vulnerable and least able to ward off any attack, and proceeded to touch her breasts, attempted to remove her bed clothes, and tried to persuade her to prolong the encounter. See *Commonwealth* v. *Gaynor, supra* at 261; *Commonwealth* v. *Walker, supra*; *Commonwealth* v. *Mamay, supra*.[8] It is immaterial that there were but two such episodes,[9] and that some months passed between them. "Where, as here, there is such a similarity in the *method* by which the defendant committed the various offenses" (emphasis in original), a four or five-month intervening time period does not make the offenses unrelated. *Commonwealth* v. *Mamay, supra* at 417 (concluding that offenses occurring within eight months were related).[10]

Nor can the defendant meet his burden of proving that any

---

[7]The defendant argues that the incidents "bore no trace of the kind of planning, scheming, or design," that he argues "have featured prominently" in our decisions affirming joinder. Rather, he continues, the sexual assaults here "were the result of impulsive acts." Although a review of our decisions provides some basis for the distinction, rule 9 does not condition joinder on the presence of situations deliberately structured by the defendant. Adults exercise enormous power over a child, especially where, as here, the adult is in a supervisory position (parent in locus). In such instances, any distinction between abuse resulting from situations that are "plotted or set up" and from "impulsive acts" is a distinction without a difference.

[8]The judge necessarily based her allowance of the motion to join on the Commonwealth's assertions of the relatedness of the offenses. See note 5, *supra*. The Commonwealth's supporting memorandum asserted another similarity — that the defendant tried to climb on top of each complainant after awakening her. The assertion, however, was not supported by the evidence at trial.

[9]Rule 9 (a) (2) expressly permits joinder of "two or more related offenses." The Commonwealth should not be denied joinder simply because it charged the defendant before he could carry out a third offense using the same pattern of conduct.

[10]Although rule 9 is modeled after Fed. R. Crim. P. 8, see Reporters' Notes to Mass. R. Crim. P. 9, Mass. Ann. Laws, Rules of Criminal Procedure 34-35 (LexisNexis 2005), the two rules are not coextensive. One distinction particularly relevant to this case is that the Federal rule permits joinder of offenses if they "are of the same or similar character." Fed. R. Crim. P. 8 (a). In contrast, our rule 9 does not permit joinder of offenses solely because they are

prejudice from joinder was so compelling that it prevented him from obtaining a fair trial, because evidence of one offense likely would have been admitted at a separate trial of the other. See, e.g., *Commonwealth* v. *Feijoo, supra* at 495. See also *Commonwealth* v. *Gallison*, 383 Mass. 659, 672 (1981) (better chance for acquittal in separate trials insufficient to show prejudice from joinder). "The evidence here showed a common pattern or course of conduct toward the two children, and was sufficiently related in time and location to be logically probative." *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982). See *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994) (conduct toward child other than complainant admissible if "closely related in time, place, and form of acts to show a common course of conduct"). Because of the similarities, the evidence of the other offense would likely be admissible not only to show a common pattern of conduct, but also "to corroborate[] the victim's testimony" and "render[] it not improbable that the acts charged might have occurred."[11] *Commonwealth* v. *King, supra.*

---

of the same or similar character, and nothing in this opinion should be construed to the contrary. See *Commonwealth* v. *Sullivan*, 436 Mass. 799, 805 n.5 (2002) ("mere similarity is not sufficient by itself to show relatedness" but "is a factor that may be considered"); *Commonwealth* v. *Ferraro*, 424 Mass. 87, 89-90 (1997) (similarities that may establish pattern of conduct or modus operandi make offenses related). Unlike the Appeals Court, our focus is not on the similarity of the *form* of sexual abuse inflicted by the defendant. See *Commonwealth* v. *Pillai*, 61 Mass. App. Ct. 603, 608 (2004) (acts comprising sexual abuse of which defendant stands convicted are "common to most indecent assault and battery cases"). Rather, it was the defendant's common method of operation — attacking his victims in a similar place and in similar circumstances where they were most vulnerable — on which the trial judge appropriately focused. She reasonably could have concluded that the offenses here were related because the similarities suggested that they "arose 'out of a course of criminal conduct or series of criminal episodes connected together.' " *Commonwealth* v. *Sylvester*, 388 Mass. 749, 755 (1983), quoting Mass. R. Crim. P. 9 (a) (1). As the judge noted in a memorandum of decision, "[t]he occasion of a young teenage girl's sleep-over was arguably the vehicle for the defendant to commit the alleged crime."

[11]As each separate trial progressed, the judge may have had additional, nonpropensity bases for admitting evidence of the other offense. For example, in the trial on Rose's complaint, if the defense were to suggest that her delay in disclosure implied that she fabricated the accusation, evidence of the offense involving Kathy would be admissible to explain the timing and manner of Rose's disclosures, including Rose's state of mind when she disclosed the

If the complaints were properly joined, the defendant argues, the judge should have given a limiting instruction sua sponte to minimize the chance that the jury would draw the forbidden inference that, if they found the defendant guilty of one offense, he must have a propensity to assault adolescent girls sexually, and therefore must be guilty of the other offense. The better practice is to give an appropriate instruction in these circumstances. See, e.g., *Commonwealth* v. *Gaynor, supra* at 263; *Commonwealth* v. *Mamay, supra* at 417-418. We cannot say, however, that the absence of an unrequested instruction in this case created a substantial risk of a miscarriage of justice because the absence of the instruction was not "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise" had the instruction been given. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

b. *Excluded evidence.* The defendant next argues on direct appeal that the judge abused her discretion by precluding him from introducing evidence of the complaining witnesses' allegedly turbulent home lives. The defendant asserts that he sought to introduce evidence to establish that the accusations were motivated in part by the complainants' resentment of Anne and the defendant for the contrasting "tranquility" in the Pillai home. He contends that the judge's ruling deprived him of his constitutional right to confront witnesses about biases or motives to fabricate their accusations or their testimony at trial. See, e.g., *Commonwealth* v. *Joyce*, 382 Mass. 222, 229 (1981).

The record does not establish that the judge precluded *all* evidence concerning the complainants' home lives.[12] Trial counsel never sought to elicit testimony from the witnesses at

---

abuse to Kathy. See, e.g., *Commonwealth* v. *Richardson*, 423 Mass. 180, 187-188 (1996); *Commonwealth* v. *Errington*, 390 Mass. 875, 880-882 (1984).

[12]The judge stated in her ruling on the defendant's motion for a new trial that, "after extensive argument by trial counsel in pretrial motion hearing and at sidebar conferences prior to the commencement of trial, [she] ruled that evidence of the respective homelives of the victims was not relevant in this trial." Appellate counsel reads this statement too broadly. The statement ends a paragraph in which the judge discusses trial counsel's attempts to obtain, through discovery motions, "counseling records, records from the Department of Social Services or school records of both victims to determine, among

trial concerning the tranquility of Anne's home life, the relative turbulence of Rose and Kathy's home lives, or any resulting resentment Rose or Kathy held toward Anne. Accordingly, the judge had no occasion to make the broad ruling asserted by the defendant, and there is no record support for the notion that she would have disallowed any such evidence. Furthermore, as discussed below, trial counsel did not provide ineffective assistance by failing to pursue this line of defense.

c. *Denial of motion for a new trial.* "The decision to allow a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or unless the trial was infected with prejudicial constitutional error" (citations omitted). *Commonwealth* v. *Nieves*, 429 Mass. 763, 770 (1999). "We afford special deference to the factual findings" of a judge who ruled on the defendant's motion for a new trial "where, as here, the motion judge also presided at the defendant's trial." *Commonwealth* v. *Zagrodny*, 443 Mass. 93, 103 (2004). With these standards in mind, we consider in turn each of the five claims of error raised by the defendant and rejected by the judge.

i. *Ineffective assistance of trial counsel.* The defendant argues that his trial counsel provided ineffective assistance by failing to impeach the complaining witnesses, specifically that counsel failed to present evidence that both complainants had reasons to fabricate their accusations.

Specifically, the defendant claims that Rose was angry with him because he had banned her from his house after she and Anne disobeyed him in the spring of 1999. The defendant also contends that trial counsel failed to establish that Anne was out of the Commonwealth during July and August of 1999,[13]

other things, whether the events of their respective domestic lives gave either a motive for bias against [Anne] due to jealousy over [Anne's] more tranquil homelife." She noted that "some documents were in fact provided to the defendant but were ultimately ruled irrelevant to this case."

[13]The information, which accompanied the defendant's motion for a new trial, included affidavits from friends and neighbors of the defendant attesting that they did not see Anne in the State during July or August, or that they saw her out of State at certain times, credit card receipts suggesting that the defendant's credit card had been used to make Amtrak purchases on several dates during the summer, and a copy of a foreign language newspaper contain-

undercutting Rose's assertion that the offense took place on a sleepover during one of those months. The defendant contends that he, through Anne, had accused Kathy of stealing $40 during the sleepover, which gave Kathy a motive to lie.[14] The defendant also faults trial counsel for failing to present evidence that Kathy admitted that she fabricated her accusations "to get [Anne] back for accusing her of stealing money."[15]

In addition, appellate counsel, in an affidavit filed with the motion for a new trial, avers "[u]pon information and belief" that trial counsel was aware prior to trial that the complainants disliked the defendant because the complainants "felt he was too strict" and that they "may have been motivated to make false accusations against [him] because they both resented [Anne] in connection with soccer, shared interests in certain boyfriends, and [Anne]'s stable family life." Appellate counsel averred that trial counsel informed him that it was "a tactical decision" not to introduce any evidence concerning the complaining witnesses' various motives to fabricate. "As to claimed errors in trial counsel's strategy, none is established unless we are persuaded that counsel's tactics were ' "manifestly unreasonable" when undertaken.' *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984), quoting *Commonwealth* v. *Levia*, 385 Mass. 345, 353-354 (1982). . . . Only 'strategy and tactics which lawyers of ordinary training and skill in the criminal law

---

ing photographs allegedly depicting Anne and her mother at an out-of-State cultural festival in late August. Also included were affidavits from Anne and her mother that contradicted the testimony they gave at trial, where they stated that Rose had, in fact, slept over in August.

[14]Kathy testified that the defendant handed her "some money and told [her] to count it" in the computer room, and that he "secretly" passed her a $20 bill when they were parked at the restaurant. However, both Kathy and her mother testified that Kathy made accusations against the defendant as they drove away from the defendant's house later that morning, before Anne allegedly communicated the defendant's accusation to Kathy.

[15]The defendant filed the affidavit of one of Anne's friends, attesting to the admission, with his motion for a new trial. The affiant did not appear at the evidentiary hearing in part because her mother did not want her to do so, and appellate counsel did not consult with the affiant's parents before obtaining the affidavit. The judge found that the affidavit "strains credulity suggesting as it does that while [the affiant and Kathy] were not good friends, on a chance phone call several months after the incident on December 23, 1999, [Kathy] confided that she was fabricating these serious charges."

would not consider competent' are manifestly unreasonable. *Commonwealth* v. *Levia, supra* at 353, quoting *Beasley* v. *United States,* 491 F.2d 687, 696 (6th Cir. 1974). See *Commonwealth* v. *Degro,* 432 Mass. 319, 333 (2000) ('It is far too easy to examine a transcript and point to ways to "do it better" '); *Commonwealth* v. *Vinton,* 432 Mass. 180, 186 (2000)." *Commonwealth* v. *Zagrodny, supra* at 98.

Here, the judge found that "[b]oth victims presented as likeable young teenage girls. [Kathy] was poised and self-confident; [Rose] was more reserved and somewhat embarrassed. . . . It is entirely possible that trial counsel demurred from calling school friends of the victims and the defendant's daughter because rather than impeaching the credibility of the victims, such testimony could trigger sympathy for the victims on the part of the jury." In the circumstances, it was not manifestly unreasonable for trial counsel to conclude that the jury would react unfavorably to any suggestion that the "likeable" teenage girls fabricated their very serious allegations against their friend's father for seemingly petty reasons.[16]

We afford strong deference to, and agree with, the judge's conclusion that trial counsel was not ineffective for failing to establish that the incident involving Rose could not have occurred in July or August, as Rose testified. The judge's conclusion was compelled by her specific finding that the evidence suggesting that Anne was out of State at the time, see note 13, *supra,* "was never provided to" trial counsel. Moreover, Anne and her mother both unhesitatingly testified at trial that Rose had slept over in August.

ii. *Bill of particulars.* The defendant contends that he was prejudiced by the discrepancy between the Commonwealth's response to his motion for a bill of particulars,[17] which alleged that the defendant had assaulted Rose "[o]n the night of August

---

[16]Trial counsel did not abandon entirely the defense of fabrication. Trial counsel sought to create reasonable doubt as to whether the incidents occurred by establishing that the complaining witnesses neither put an immediate end to the sleepovers nor immediately telephoned their parents once the alleged abuse started, did not immediately report the abuse to the defendant's wife, and delayed disclosing the full details of the abuse.

[17]The judge allowed the defendant's motion with respect to the date, time, and place that each of the offenses in Rose's complaint were alleged to have

18, 1999," and the Commonwealth's case at trial, during which Rose testified that she was assaulted "sometime in July or August," but could not remember the specific date.[18] We disagree.

The function of a bill of particulars "is to give a defendant reasonable knowledge of the nature and character of the crime charged." *Commonwealth* v. *Crawford*, 429 Mass. 60, 69 (1999), quoting *Rogan* v. *Commonwealth*, 415 Mass. 376, 378 (1993). A request for a bill of particulars does not entitle a defendant "to secure a résumé of the [Commonwealth's] evidence," *Commonwealth* v. *Amirault*, 404 Mass. 221, 233 (1989), quoting *Commonwealth* v. *Hayes*, 311 Mass. 21, 25 (1942), or to require specific evidence as to facts that do not relate to an element of the crime charged. See *Rogan* v. *Commonwealth, supra* at 379. Accordingly, the standard for showing prejudice from a variance between the bill of particulars and trial testimony is high. Even when the bill of particulars and the evidence at trial contrast as to an element or theory of the crime charged, relief is warranted only on a showing that the bill of particulars failed to provide the defendant with "notice to prepare his defense." *Commonwealth* v. *Amirault, supra* at 234. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 157, cert. denied, 457 U.S. 1137 (1982) (no prejudice by variance between theory of murder in the first degree in bill of particulars and in Commonwealth's case at trial because defendant had effective notice by autopsy report of extreme atrocity or cruelty theory).

Here, any variance between the bill of particulars and the Commonwealth's case related entirely to a collateral matter. As the judge properly ruled, the date on which the assault on Rose occurred was not material either as an element of the crime or as a component of the Commonwealth's case. The defendant

occurred, but denied the motion with respect to "[t]he exact acts of indecent assault and battery which the Commonwealth allege[s] as the basis for each charge." Nevertheless, the Commonwealth's response set forth details of the charges with respect to both Rose and Kathy, including the description of specific acts of indecent assault and battery.

[18]The defendant moved for a required finding of not guilty on Rose's complaint at the close of the Commonwealth's case and at the end of rebuttal testimony, asserting that the Commonwealth failed to prove the offense took place on the date specified in the complaint and the bill of particulars. The judge denied the motions.

has not cited any case in which a discrepancy on such a matter, between the bill of particulars and the evidence at trial, has resulted in relief. The facts here do not demonstrate that this case should be an exception, or that the defendant suffered meaningfully as a result of the discrepancy.

The defendant contends that he was prepared to impeach Rose, had she testified to the August 18-19 date, with evidence that the defendant's wife was not working her normal night shift on those dates, contradicting Rose's testimony that the wife was at work on the night of the assault. This contention fails to establish the defendant was prejudiced, as the impeachment value of the inconsistency would have been slight and could have been ameliorated on redirect examination.[19] Nor are we convinced that the defendant was prejudiced by his inability, on account of the lack of a less specific bill of particulars, to prepare a defense that would have sought to prove that Anne had been out of the Commonwealth for all of July and August, as discussed above. Any such defense would have been equally material, of course, to refuting a claim by Rose that she had been assaulted on August 18-19. And we note again that such a defense would have undermined the credibility of Anne and her mother, who testified that Rose slept over in July and August.

iii. *Prosecutorial overreaching.* The defendant contends that inappropriate conduct by the prosecutor at trial prejudiced the jury against him. Although we do not condone certain of the prosecutor's actions, they were not so prejudicial, alone or in combination, as to have deprived the defendant of a fair trial. We discuss the challenged actions in the order they occurred at trial.

The defendant first argues that the prosecutor injected his personal convictions and impermissibly vouched for the credibility of the Commonwealth's witnesses during his opening argument when he said, "I'm telling you right now that I will prove that to you beyond a reasonable doubt." The statement, to

---

[19]The prosecutor could have elicited testimony from Rose that she remembered the specifics of the assault but perhaps not the exact date on which it occurred. We cannot imagine that any rational jury would tend to doubt the testimony of a fifteen year old girl they otherwise found credible simply because she could not recall the exact date on which, nearly two years earlier, she had been assaulted.

which the defendant did not object, was no more than the prosecutor's contention that the Commonwealth expected to meet the requisite standard of proof, and could not have created a substantial risk of a miscarriage of justice.

The defendant next contends that the prosecutor prejudiced the jury by calling Kathy as a rebuttal witness to impeach Anne's credibility. Anne had testified that she loved her father, and that Kathy never told her during the sleepover that she was uncomfortable with the defendant. Kathy testified in rebuttal that during the sleepover, Anne told her that "she hated her father, and because of him, her friends don't want to come over any more."[20] The judge summoned counsel to sidebar, explained that she was "not going to allow [the Commonwealth] to impeach the credibility of a 15-year-old that makes a statement that she loves her father," and instructed the jury that Kathy's rebuttal testimony was "struck for all purposes."[21] The defendant moved for a mistrial, which the judge denied. Although the testimony was prejudicial in that it suggested prior bad acts by the defendant toward Anne's friends, the judge issued an immediate, forceful curative instruction that excluded the testimony from the jury's consideration. We presume that the jury followed the judge's instruction.

Last, the defendant asserts that the prosecutor made three prejudicial remarks in his closing argument; the defendant did not object to two of the three. After reviewing the remarks, particularly the context in which they were made, we agree with the judge that her instructions adequately addressed any prejudice that may have arisen.[22] See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-519 (1987). See also, e.g., *Commonwealth* v.

---

[20]On cross-examination, the Commonwealth had asked Anne, "Isn't it true that you told [Kathy] that some of your friends wouldn't come over anymore because of your father?" The judge sustained the defendant's objection to the question.

[21]The judge instructed the jury: "Members of the jury, with respect to the testimony that you have just heard, that testimony is struck for all purposes. You are to put it out of your mind. You are not to consider it in any way, shape, or form in your deliberations. Nor are you to consider the fact that [Kathy] was brought back here as a rebuttal witness. You are not to use any of the testimony that you have just heard in any way in your deliberations in this case."

[22]The judge instructed the jury that it "would be improper . . . to consider

*Grandison*, 433 Mass. 135, 143 (2001) (passing comment unlikely to have made difference to jury); *Commonwealth* v. *Pontes*, 402 Mass. 311, 316 (1988) (allegedly improper remarks reviewed in context of entire argument, evidence at trial, and any instructions from judge).

iv. *Unanimity instructions.* The defendant next argues in his motion for a new trial that the judge committed reversible error by failing to instruct the jury sua sponte on specific unanimity regarding the alleged touchings of each complainant. More specifically, he contends that she should have instructed the jury that they had to agree unanimously as to which eight individual touchings corresponded to each of the eight counts in the complaints. The defendant asserts that this omission created a substantial risk that different jurors voted to convict him based on different discrete acts for each specific count. This risk is magnified in Kathy's complaint, which charged six counts even though she testified that the defendant touched her inappropriately "more than twenty" times. Because, as we discuss below, the evidence was sufficient to support a guilty verdict on only a single count of Rose's complaint, we focus on Kathy's complaint.

Although Kathy testified that the defendant touched her inappropriately more than twenty times, her testimony detailed just ten different touchings. Kathy's testimony, which the jury's verdict indicates they believed, would have supported a guilty verdict beyond a reasonable doubt as to each of the touchings she detailed.[23] The judge clearly instructed the jury that they were obligated to consider separately and render a unanimous verdict on each separate count.[24] The failure of the judge to give the instruction the defendant now seeks did not give rise to a

any personal feelings about the defendant's race, religion, [or] national origin," that closing arguments may not be considered as evidence, and that the jury's recollection of the evidence controls.

[23]Recognizing this, the prosecutor stated during his closing argument that, "from the testimony elicited, we may be even able to come up with more" touchings than the six charged counts.

[24]The instructions consisted of a statement of each of the elements of the charge of indecent assault and battery on a child under the age of fourteen years for each separate count. Additionally, the instructions stated, "Now, the first complaint contains a total of two charges. Each count, or charge, is the accusation of a different crime. You must consider each count separately, and

substantial risk of a miscarriage of justice in the circumstances. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 675-677 (1987); *Commonwealth* v. *Black*, 50 Mass. App. Ct. 477, 478 (2000) (no substantial risk of miscarriage of justice where acts occur within close proximity as part of same criminal episode and defendant did not request specific unanimity instruction).

v. *Sufficiency of evidence.* Although the defendant did not move for a required verdict on this basis at trial, he contends in his motion for a new trial that the evidence supported only one count of indecent assault and battery on Rose. We agree.

As discussed above, the judge properly instructed the jury that the two counts charging indecent assault and battery on Rose constituted separate crimes, each requiring a separate and unanimous finding that the defendant was guilty beyond a reasonable doubt. Therefore, in determining whether there was evidence sufficient to support the defendant's convictions, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). In evaluating the evidence at trial, we may consider the inferences a jury permissibly could have made from trial testimony. See *Commonwealth* v. *Latimore, supra.* But here, given Rose's testimony and permissible inferences therefrom, no rational jury could have found two separate crimes beyond a reasonable doubt.

Rose testified[25] that she woke to find the defendant touching her breasts and squeezing her nipple — evidence sufficient to support one count of indecent assault and battery. The Com-

---

your verdict on each separate count must be unanimous, whether it is guilty or not guilty." In instructing the jury foreman, the judge stated, "Now, with respect to the verdict slips . . . [w]hen the jury has reached a unanimous verdict with respect to Count One of that complaint, you should record the verdict, not guilty or guilty, and again the verdict must be unanimous with respect to Count One. Likewise, with Count Two, when the jury has reached a unanimous verdict on Count Two, you are to record the verdict, either not guilty or guilty, and you are to sign and date the verdict slip." A similar recitation of the necessity of a unanimous verdict followed for each separate count.

[25]Rose testified as follows:

monwealth does not claim that the defendant's subsequent attempts to lift Rose's shirt supported a second conviction of indecent assault and battery. Nor does the Commonwealth claim that there was evidence at trial sufficient to support a conviction on another ground outlined in the bill of particulars, see *supra*, that alleged the defendant also had touched Rose's thigh on the night of the assault. The Commonwealth's claim, rather, is that Rose's testimony describing a simultaneous touching of her breast and nipple supports two convictions. With no evidence that the touching of the breast and nipple were in any way separate events, we cannot conclude that the evidence supported a conviction of two separate crimes beyond a reasonable doubt. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 120 (1987), quoting *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979) (two acts may be "so closely related in fact as to constitute in substance but a single crime"). We therefore reverse as duplicative the conviction on the second count of Rose's complaint.

d. *Sentence.* In *Commonwealth* v. *Pagan, ante* 161, 172-173 (2005), we held unconstitutional those portions of G. L. c. 275,

---

ROSE: "I woke up to [the defendant] touching my breasts. Like, his hands were on my breasts, and —"

THE PROSECUTOR: "Let me stop you for one second. When you say 'touching,' can you describe for the jury how [the defendant] was touching your breast?"

ROSE: "He was squeezing them. Like, I woke up to him squeezing my nipple, and I pulled away."

". . .

THE PROSECUTOR: "What did you do?"

ROSE: "I pulled away, and I said, 'Get away from me.' And he kept trying to lift up my shirt, and he kept saying, 'Let me see. Let me see.' And I was just saying no."

". . .

THE PROSECUTOR: "And what happened after that?"

ROSE: "I rolled over. Like, I pulled my shirt up and fixed myself. . . ."

THE PROSECUTOR: "And, specifically, where were [the defendant's] hands when you woke up?"

ROSE: "On my nipple and on my breasts."

THE PROSECUTOR: "Was it the right breast, left breast, both?"

ROSE: "I don't remember. I just pulled away as fast as I could."

§ 18, that permit a judge to impose a term of community parole supervision for life on a first-time sexual offender convicted of certain crimes, including indecent assault and battery on a child under fourteen years. Accordingly, the defendant's sentence, which includes community parole supervision for life, cannot stand. See *Commonwealth* v. *Renderos*, 440 Mass. 422, 435 (2003) (vacating entire sentence and remanding for resentencing where sentence improperly included lifetime community parole).[26] As discussed above, we also reverse the defendant's conviction on one count of Rose's complaint. We affirm the remaining convictions and the denial of the defendant's motion for a new trial, vacate the sentence, and remand the case to the District Court for resentencing consistent with this opinion.

*So ordered.*

---

[26]The judge did not have the benefit of our decision in *Commonwealth* v. *Renderos*, 440 Mass. 422, 427-434 (2003), in which we discussed the procedure a judge must follow before sentencing a first-time offender to lifetime community parole pursuant to G. L. c. 275, § 18. The defendant in this case was not afforded all of the required procedural protections before receiving his sentence.