NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-893

COMMONWEALTH

vs.

ROBERT HERSEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of indecent assault and battery on a person over fourteen, dissemination of matter harmful to minors, photographing an unsuspecting nude person, and photographing sexual or other intimate parts of a child.  On appeal, the defendant claims error by a judge other than the trial judge (motion judge) in denying the defendant's motion to suppress his recorded statement, and error by the trial judge in denying the defendant's motion for relief from prejudicial joinder.  We affirm.

Suppression.  We recite the facts as the motion judge found them, supplemented by our independent review of the audio-visual recording of the defendant's statement.  Commonwealth v.

Daveiga, 489 Mass. 342, 346 (2022); Commonwealth v. Davis, 98 Mass. App. Ct. 604, 612 (2020).

A little before 3 A.M. on September 28, 2018 (the same year as all subsequent dates), police responded to a 911 call of a sexual assault on a victim by his boxing coach. A Springfield police officer generated an incident report detailing accusations by a seventeen year old, whom we shall call "Adam." Adam said the assault happened the night before and named the defendant, his coach, as the perpetrator. A little after 3 A.M., another youth, whom we shall call "Frank," arrived at the police station and disclosed a past sexual assault.[1] In an incident report, Frank named the defendant as the assailant.

At 5:50 that evening, police were dispatched to Belmont Avenue in response to two 911 calls. One call was from a relative of Adam's who said that she and others were there with the defendant and keeping him until police arrived. The other call was from the defendant requesting that officers be sent to his location because of disgruntled persons who had congregated there. When the officers arrived, one went to speak with the crowd while the other went to speak with the defendant.

---

[1] The judge made no finding about Frank's age, but a sergeant testified that Frank was seventeen.

2

When the officers asked the defendant "what was going on; why he had called 911," he "began talking about the crowd and how they had been harassing him and alleging that he had sexually abused someone." After about ten minutes, the defendant was handcuffed behind his back, placed in a cruiser, and told he was being detained but was not under arrest. The defendant then made unsolicited statements "that on the previous evening he had been contacted by [Adam] and had given him a ride. He denied having committed any sexual assault of [Adam]." Reasoning that by this point the defendant was in custody and no Miranda warnings had been given, the motion judge suppressed those statements.[2]

While the defendant was detained in the cruiser, a sergeant on scene communicated with a major crime sergeant at the station, where Frank, who had returned to the station as events on Belmont Avenue were unfolding, was being interviewed. When the sergeants made the connection between the morning's incident reports, the events on Belmont Avenue, and Frank's interview, they consulted an assistant district attorney, and a determination was made that there was probable cause for an

---

[2] The motion judge declined to suppress the defendant's statements to first responders reasoning that they were not the product of a custodial interrogation. On appeal, the defendant does not challenge that ruling.

3

arrest.  At 6:50 P.M., the defendant was arrested and transported to the station.  An officer advised the defendant of his Miranda warnings during his booking procedure. Additionally, an officer provided the defendant an opportunity to make a telephone call.  The defendant advised the police that he wanted to call his mother but did not know the number and could not look it up because his cell phone was seized as evidence.  He did not attempt to call an attorney.  Eventually, he was asked whether he wanted to talk and said he did.  At 11:25 P.M., an interview commenced.  The interview was recorded, and we have independently reviewed the recording.

A detective recited Miranda warnings to the defendant, who said he understood.  The defendant read the waiver of rights form aloud, and confirmed his understanding as the major crime sergeant entered the room.  The defendant also signed the Miranda form.

The defendant stated that he was forty years old, had a college education, and was not under the influence of drugs or medication.  He spoke for close to two hours, during which time he was relaxed and never appeared to be, or expressed being, in physical or mental distress.  During the interview, he stated thrice that he understood his right to remain silent and wait for a lawyer.  The defendant "wanted to talk," however, because

4

he was "an honest person" and because he "realized that this was a nice little setup." Offering details about Frank after being asked if he wanted to discuss anyone other than Adam, the defendant explained that Frank was one of the defendant's boxers, that previously (the defendant did not say when), the defendant picked up Frank in his van and took Frank to a "massage parlor," and that about two weeks ago, Frank's friend Adam joined the gym. The defendant further explained that just before 10 P.M. on September 27, the defendant offered to pick up Adam and take him to a massage parlor. When they could not get a massage, the defendant drove Adam to a park, where there was physical contact between Adam and the defendant's erect penis. The defendant dropped Adam off at home and started receiving messages on his cell phone from Adam accusing the defendant of forcing Adam to engage in sexual conduct. The defendant stated that he found the accusations "disturbing," because in his view he had not forced Adam to do anything, nor would he ever put his boxers at risk. The defendant said he was there "to tell you what really happened," which was nothing sexual with Frank and something sexual with Adam that Adam had initiated. Gesturing with his hand and turning his head, the defendant stated that if by giving a statement "I incriminated my way -- and here's the camera -- if I incriminate my in any way, okay, then so be it."

5

On appeal, the defendant contends that his Miranda waiver and recorded statement were tainted by the coercive circumstances of his detainment on Belmont Avenue and "a sense of futility that he ha[d] already incriminated himself" there. Commonwealth v. Thomas, 469 Mass. 531, 551 (2014); quoting Commonwealth v. Prater, 420 Mass. 569, 581 (1995). He claims that the coercion was aggravated by his inability to make a phone call and the failure of police to tell him of his right to a prompt arraignment. The motion judge found no intentional deprivation of the defendant's right to make a phone call and no violation of his rights regarding prompt arraignment. Passing over the merits of those findings, the defendant challenges the motion judge's ultimate ones, that the waiver of rights and recorded statement were knowingly made and "clearly voluntary."

We see no flaw in the motion judge's analysis. If the time in the holding cell was enough for the defendant to realize he was the victim of a "setup" by two teenagers, it was enough to remove any coercive taint from the events on Belmont Avenue. Our review of the video footage allows us to conclude that the defendant did not feel he had previously made incriminating statements that would make further efforts to withhold information futile. Commonwealth v. Rosa-Roman, 485 Mass. 617, 631 (2020). Both times the defendant acknowledged giving Adam a

6

ride on September 27 and denied sexually assaulting Adam, but "the similarity ends there." Commonwealth v. Watkins, 375 Mass. 472, 482 (1978), S.C., 486 Mass. 801 (2021). Five hours after he was detained, and four hours after he was arrested, booked, and placed in a holding cell, the defendant described to detectives (who were not present at Belmont Avenue where the initial statements were made) to doing much more with Adam than giving him a ride. In addition, he added information about Frank, not because "the cat was already out of the bag," but because he was "eager to assert his innocence." Rosa-Roman, supra at 632. See Commonwealth v. Harris, 75 Mass. App. Ct. 696, 700 (2009) (passage of two hours and involvement of different police personnel broke sequence of events).

The defendant was "of sufficient age, educational background, and intelligence to comprehend the meaning of his actions" in waiving his Miranda rights and giving a statement, Commonwealth v. Mandile, 397 Mass. 410, 413-414 (1986), S.C., 403 Mass. 93 (1988), and in fact he did comprehend, as evidenced by his repeated assertions to that effect, his refusal to answer questions he thought did not "pertain" to what he was there to discuss, and his failure to challenge as involuntary a consent to search his cell phone or his provision of a deoxyribonucleic acid (DNA) sample during the interview, also following

7

recitations of rights by the detectives and signings of waivers. See Commonwealth v. Delossantos, 492 Mass. 242, 247 (2023) (Commonwealth must demonstrate not only what warnings were provided to defendant but also that he understood them). The defendant never expressed regret for having spoken with the detectives or appeared to struggle with his decisions, Commonwealth v. Richards, 485 Mass. 896, 909 (2020), and there is no claim that his waiver or incriminating statements were tied to false representations, promises, assurances, or other "problematic tactics" by the detectives. Commonwealth v. Baye, 462 Mass. 246, 257 (2012). In sum, the totality of the circumstances supports the motion judge's findings of voluntariness beyond a reasonable doubt. Commonwealth v. Tremblay, 480 Mass. 645, 656 & n.8 (2018); Mandile, supra at 413.

Joinder. The defendant was indicted for what he called "sexual abuse" crimes committed against Adam, Frank, and another youth between June 1 and September 28; and "sexual image" crimes committed between April 1 and September 28 based on images recovered from the defendant's cell phone. Describing those images as having been secretly taken by the defendant of boxers in his gym and arguing that all charges arose from the defendant's scheme to create "opportunities for his own sexual

8

gratification through and with the students he coached," the Commonwealth sought joinder under Mass. R. Crim. P. 9, 378 Mass. 859 (1979).  The defendant responded with a motion for relief from prejudicial joinder and to sever the sexual image charges, arguing -- as he does on appeal -- that they were not sufficiently related to the sexual abuse charges to overcome the compelling prejudice from a joint trial.  See Commonwealth v. Pillai, 445 Mass. 175, 180 (2005).  After a pretrial hearing, the Commonwealth's motion was marginally endorsed "allowed" and the defendant's endorsed "denied."

We conclude the trial judge did not clearly abuse her discretion.  Pillai, 445 Mass. at 180.  From what appears to have been before her when she was making the decision,[3] the victims of all charged crimes were the same gender, near the same age, and had similar relationships to the defendant. Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 407 (2022).  In each case, the defendant was alleged to have used his position of trust to gain access to and commit sexual crimes against the victims.  Commonwealth v. Mamay, 407 Mass. 412, 416 (1990). Evidence of the other charged conduct would have been admissible at separate trials because the offenses were close enough in

---

[3] We note that the defendant's brief recites facts from trial, not before the judge at the time of her decision on the joinder motion.

9

time to be probative and it "shows a common scheme and a pattern of operation that tends to prove all the indictments," Commonwealth v. Feijoo, 419 Mass. 486, 494-495 (1995); as such, "we cannot say that any prejudice from the joinder was so great that the defendant was prevented from obtaining a fair trial." Commonwealth v. Wilkerson, 486 Mass. 159, 176 (2020).

For all these reasons, the judgments are affirmed.

So ordered.

By the Court (Green, C.J., Walsh & Smyth, JJ.[4]),

Clerk

Entered:  August 19, 2024.

---

[4] The panelists are listed in order of seniority.

10