CASH, COMMONWEALTH vs., 101 Mass. App. Ct. 473

 
 COMMONWEALTH vs. WILLIAM A. CASH.

101 Mass. App. Ct. 473
 May 20, 2022 - August 3, 2022

Court Below: Superior Court, Essex County
Present: Green, C.J., Kinder, & Neyman, JJ.

 

No. 21-P-366.

Homicide. Armed Assault with Intent to Murder. Trafficking. Jury and Jurors. Self-Defense. Practice, Criminal, Challenge to jurors, Severance, Instructions to jury, Argument by prosecutor.

At the trial of indictments charging, inter alia, murder and sex trafficking, the Superior Court judge did not abuse his discretion in empanelling a juror who, during inquiry by the judge concerning the juror's ability to be impartial despite the nature of the charges, answered affirmatively that she "believe[d]" she could be impartial, where the judge observed first-hand the juror's demeanor and tone and, determining that the juror's response amounted to an unequivocal statement of impartiality, helpfully explained his reasoning, observing that prospective jurors often used equivocal language because they were conscientious, and expressed his view that the juror fell within that category. [475-478]

A Superior Court judge did not err in joining for trial certain murder-related offenses and sex trafficking-related offenses, where evidence of the sex trafficking-related charges would have been admissible at a separate murder trial, in that the defendant's trafficking of women both explained his motives for the shooting and identified him as the shooter; and where, for the same reason that evidence of the sex trafficking-related charges would be admissible at a separate murder trial, the defendant did not suffer prejudice by having one jury hear all the evidence. [478-479]

At a murder trial, the defendant was not entitled to jury instructions on either self-defense or manslaughter, where evidence that the defendant was struck by a lightweight basket thrown by the victim immediately before or at the time of the shooting was not sufficient to warrant the requested jury instructions, in that it neither qualified as provocation that would overwhelm a reasonable person's capacity for reflection or restraint nor supported a reasonable belief on the part of the defendant that he was in imminent danger of death or serious bodily harm. [479-480]

At a criminal trial, the prosecutor's comment in closing argument that it could never be known exactly what the defendant was thinking or what he assumed was not reasonably susceptible of being interpreted as a comment on the defendant's failure to take the stand, given that the prosecutor made the comment in reference to the defendant's state of mind and intent while arguing that the defendant was angry at the time of the shooting [480]; further, the prosecutor did not improperly inflame the jury by referring to the 

 Page 474 

victim's photograph, where the photograph was already properly before the jury and the prosecutor was entitled to tell the them something of the person whose life had been lost in order to humanize the proceedings, and where, in any event, the judge's instruction to the jury that they should not decide the case based on sympathy and that closing arguments were not evidence sufficiently limited any potential prejudice to the defendant [480-481].

Indictments found and returned in the Superior Court Department on June 1, 2017.

 The cases were tried before Timothy Q. Feeley, J.

Joanne T. Petito for the defendant.

Marina Moriarty, Assistant District Attorney, for the Commonwealth.

 GREEN, C.J. A Superior Court jury convicted the defendant of various charges, including murder in the second degree, G. L. c. 265, § 1; armed assault with intent to murder, G. L. c. 265, § 18 (b); and trafficking of a person for sexual servitude, G. L. c. 265, § 50. On appeal, the defendant claims error in the trial judge's denial of his for-cause challenge to a juror based on the juror's use of equivocal language concerning her ability to be impartial. Additionally, he challenges the joinder of the murder-related and trafficking-related charges, the failure of the judge to instruct the jury on manslaughter and self-defense, and the prosecutor's closing argument. Discerning no cause to disturb the judgments, we affirm. 

 Background. We summarize the facts as the jury may have found them, reserving facts relevant to the defendant's claims of instructional error for later discussion. The defendant ran a sex trafficking scheme in which he provided drugs to women and required them to engage in prostitution to repay him. Amy (a pseudonym) was a victim of this trafficking scheme, and she alleged at trial that the defendant threatened her and burned her with a heated clothes hanger if she failed to earn her quota when she worked for him. 

 In early 2017, the defendant met another woman, Marcy (a pseudonym), at the apartment building where Amy lived. Over several encounters, he provided drugs to Marcy, complimented her, and attempted to convince her to join his prostitution scheme. However, Marcy stopped visiting him after a while, because she did not want to engage in prostitution.

 On April 16, 2017, the defendant, while driving, saw Marcy walking with Leonardo Clement and Prince Belin. Marcy was in a romantic relationship with Belin and was living with him and 

 Page 475 

Clement. The defendant attempted to talk to Marcy, but Belin prevented him from doing so. The defendant angrily drove away, but minutes later returned on foot. After another verbal confrontation with Belin, the defendant shot both him and Clement, killing Clement and seriously wounding Belin. At trial, two eyewitnesses testified that Clement threw a lightweight plastic basket at the defendant immediately before or contemporaneously with the shooting.

 The defendant was tried on seven indictments related to the shooting (the murder-related charges) and four indictments related to sex trafficking (the sex trafficking-related charges). The latter included two indictments alleging sex trafficking, one indictment of mayhem regarding Amy, [Note 1] and one indictment alleging assault and battery by means of a dangerous weapon of Amy. The jury found the defendant guilty on all murder-related charges except for the charge of murder in the first degree of Clement, on which the jury returned a verdict of guilty on the lesser included charge of murder in the second degree instead. Additionally, while the jury found the defendant guilty on the two indictments charging him with sex trafficking, they acquitted him of the indictment charging assault and battery by means of a dangerous weapon of Amy.

 Discussion. 1. Juror challenge. The defendant claims that the trial judge erroneously denied his for-cause challenge of juror no. 15 due to the juror's equivocal response concerning her ability to be impartial. Citing Commonwealth v. Susi, 394 Mass. 784 (1985), [Note 2] he argues that he is entitled to a new trial, as he was forced to use a peremptory challenge for juror no. 15, which prematurely depleted his peremptory challenges and required him later to accept a juror whom he would otherwise have excluded by exercise of a peremptory challenge. 

 When the trial judge described the nature of the charges in this case and asked whether she could be impartial, juror no. 15 stated that she found the allegations "very disturbing" and "not something that [she had] really been exposed to ever." The judge then inquired whether she could "decide this case based solely on the evidence despite [her] characterization of the conduct as disturbing." 

 Page 476 

The juror replied, "I believe I could decide it on the evidence that I hear." Defense counsel requested the judge to further question the juror as her answer was equivocal, but the judge declined the request. The judge then explained on record why he found the juror's response unequivocal:

"Conscientious people frequently in my experience, and 'frequently' may be an understatement, say I believe I can, I'll certainly try to, I expect I could. . . . [They] do not say unequivocally yes because they're conscientious. . . . My sense from [the juror] is that she is a careful, conscientious person . . . [and] in no way did her use of the word 'believe' suggest that she didn't think she'd be able to and that she wouldn't do everything in her power to be fair and impartial."

 Defense counsel subsequently challenged the juror for cause and when the judge overruled the challenge, defense counsel exercised a peremptory challenge, and the judge excused the juror.

 Where a prospective juror "has expressed or formed an opinion regarding the case, or has an interest, bias, or prejudice related to the unique situation presented by the case," Commonwealth v. Soares, 377 Mass. 461, 482 (1979), cert. denied, 444 U.S. 881 (1979), "[i]t is proper for the judge to question further in order to clarify whether the juror could be impartial," Commonwealth v. Jaime J., 56 Mass. App. Ct. 268, 274 (2002). Through "further inquiry that is both meaningful and fair, and an assessment of the juror's credibility" (footnote omitted), Commonwealth v. Rios, 96 Mass. App. Ct. 463, 471-472 (2019), "the judge must satisfy him- or herself that the prospective juror will set aside that opinion or bias and properly weigh the evidence and follow the instructions on the law," Commonwealth v. Williams, 481 Mass. 443, 448 (2019).

 We review a trial judge's determination of a prospective juror's impartiality for an abuse of discretion. See Commonwealth v. Colton, 477 Mass. 1, 17 (2017). This deferential standard is appropriate because "[t]he determination of a juror's impartiality 'is essentially one of credibility, and therefore largely one of demeanor'" (citation omitted). Commonwealth v. Ferguson, 425 Mass. 349, 352-353 (1997). We have long recognized that a trial judge is in a superior position to assess credibility than an appellate court, see Murphy v. Boston Herald, Inc., 449 Mass. 42, 

 Page 477 

50 (2007), as the judge has first-hand knowledge of the prospective juror's tone, demeanor, and body language, such as hesitation and eye contact, or the lack thereof. See Commonwealth v. Lopes, 440 Mass. 731, 736 (2004). Therefore, "[w]hen a trial judge . . . has examined a juror for possible bias and declared her indifferent, appellate courts defer to the judge's [broad] discretion 'unless juror prejudice is manifest'" (citation omitted). Jaime J., 56 Mass. App. Ct. at 272.

 Citing Commonwealth v. Long, 419 Mass. 798, 804 (1995), in which the Supreme Judicial Court held that a trial judge abused his discretion by empanelling a juror who would not state unequivocally that he would be impartial, the defendant argues that the judge erroneously denied his for-cause challenge of juror no. 15. However, "[i]t is well settled that a potential juror's use of seemingly equivocal language is not determinative of the juror's ability to be impartial." Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 827 (2019). Prospective jurors' words are often but one, albeit significant, factor in determining impartiality. See Jaime J., 56 Mass. App. Ct. at 274 (considering prospective juror's demeanor and voice inflection in evaluating impartiality). A trial judge must consider contextual factors, such as tone and demeanor, in evaluating a prospective juror at voir dire. See Williams, 481 Mass. at 453 ("Judges are expected to, and indeed must, use their discretion and judgment to determine whether a prospective juror will be fair and impartial based on verbal and nonverbal cues as well as the totality of the circumstances" [emphasis added]). But see Rios, 96 Mass. App. Ct. at 470 ("the judge may accept a juror's statement that he or she is impartial unless 'solid evidence of a distinct bias' appears" [citation omitted]).

 Here, the trial judge properly inquired about juror no. 15's ability to be impartial despite the nature of the charges, and the juror answered in the affirmative. Despite the juror's use of "I believe," the judge determined that her response amounted to an unequivocal statement of impartiality. While not required, the judge helpfully explained his reasoning, observing that prospective jurors often use equivocal language because they are conscientious, and expressing his view that this juror fell within that category. As the Supreme Judicial Court concluded in Colton, 477 Mass. at 17, a seemingly equivocal response from a prospective juror "fairly could be viewed as unequivocal" depending on 

 Page 478 

the juror's tone and demeanor. [Note 3] Where, as here, the trial judge (who had the unrivaled benefit of observing first-hand the juror's demeanor and tone) determined that the juror's response was unequivocal, we discern no abuse of discretion in the judge's decision to empanel the juror. 

 2. Joinder. The defendant also claims that the murder-related offenses and sex trafficking-related offenses were improperly joined for trial, arguing that they were not sufficiently related. 

 Under Mass. R. Crim. P. 9 (a) (3), 378 Mass. 859 (1979), "the trial judge shall join [related] charges for trial unless he determines that joinder is not in the best interests of justice." "Two or more offenses are related if they . . . arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1). "The propriety of joining offenses for a single trial often turns on whether evidence of the other offenses would be admissible in separate trials on each offense." Commonwealth v. Pillai, 445 Mass. 175, 180 (2005). "[T]he decision whether to join offenses for trial is a matter left to the sound discretion of the judge . . . and will not be reversed unless there has been 'a clear abuse of discretion'" (citation omitted). Id. at 179-180.

 We discern no error in the joinder, as evidence of the sex trafficking-related charges would be admissible at a separate murder trial. See Commonwealth v. Gallison, 383 Mass. 659, 672 (1981) (joinder proper where all evidence would be admissible in at least one separate trial). [Note 4] As argued by the Commonwealth, the defendant's trafficking of women both explained his motives for the shooting and identified him as the shooter. His failed attempt to lure Marcy into prostitution helped to explain why he shot Clement and Belin, who sought to prevent the defendant from interacting with Marcy. In addition, Amy's testimony concerning the defendant's trafficking scheme corroborated Marcy's account of her interactions with the defendant before the shooting, bolstering the evidence of identification and motive. 

 Page 479 

 We likewise reject the defendant's alternative argument that the "best interests of justice" required separate trials. To support such a claim, the defendant must show that "the prejudice from joinder was 'so compelling that it prevented him from obtaining a fair trial'" (citation omitted). Commonwealth v. Walker, 442 Mass. 185, 200 (2004). As explained supra, because evidence of the sex trafficking-related charges would be admissible at a separate murder trial, the defendant did not suffer prejudice by having one jury hear all the evidence. Additionally, the jury acquitted the defendant of assault and battery by means of a dangerous weapon based on his act of burning Amy with a clothes hanger, and convicted him only of murder in the second degree of Clement. As "the jury carefully considered the evidence with regard to each crime charged," Commonwealth v. Delaney, 425 Mass. 587, 595 (1997), we are not persuaded that the defendant was prejudiced by the joinder. 

 3. Jury instructions. Based on testimony that Clement threw a lightweight basket at the defendant immediately before or at the time of the shooting, the defendant argues that the judge should have instructed the jury on self-defense and manslaughter.

 "[A] self-defense instruction must be given when deadly force was used only if the evidence, viewed in the light most favorable to the defendant, permits at least a reasonable doubt that the defendant reasonably and actually believed that he was in 'imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force'" (citation omitted). Commonwealth v. Pike, 428 Mass. 393, 396 (1998). A manslaughter instruction based on reasonable provocation is warranted "if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool" (citation omitted). Commonwealth v. Andrade, 422 Mass. 236, 237 (1996). Because the defendant timely requested the jury instructions at trial, we review for prejudicial error. See Commonwealth v. Graham, 62 Mass. App. Ct. 642, 651 (2004).

 Viewing the evidence in the light most favorable to the defendant, we conclude that the defendant was not entitled to either instruction. Being struck by a lightweight basket neither qualified as provocation that would "overwhelm [a reasonable person's] capacity for reflection or restraint," Commonwealth v. Brea, 488 Mass. 150, 156 (2021), nor supported a reasonable belief on the 

 Page 480 

part of the defendant that he was in imminent danger of death or serious bodily harm. As there was insufficient evidence to warrant the requested jury instructions, there was no error in the trial judge's refusal to give them. [Note 5]

 4. Prosecutor's closing argument. The defendant additionally claims that the prosecutor improperly referred to his failure to testify and inflamed the jury's emotions during closing argument. As the defendant properly objected on both grounds at trial, we review for prejudicial error. See Commonwealth v. Garcia, 75 Mass. App. Ct. 901, 901 (2009).

 Citing the prosecutor's comment that "we will never [k]now exactly what [the defendant] was thinking or what he assumed," the defendant contends that the prosecutor improperly referred to his failure to testify. However, the prosecutor made this comment while arguing that the defendant was angry at the time of the shooting, referring to his state of mind and intent. As the statement was not "reasonably susceptible of being interpreted as a comment on the defendant's failure to take the stand" (citation omitted), Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 391 (2020), we discern no error.

 Finally, while the defendant contends that the prosecutor improperly inflamed the jury by referring to Clement's photograph, we disagree. The prosecutor's statements, while "certainly sympathetic . . . were not excessive, nor were they the focal point" of her lengthy closing argument. Commonwealth v. Rodriguez, 437 Mass. 554, 567 (2002). The photograph was already properly before the jury, and "[t]he prosecutor [was] entitled to 'tell the jury something of the person whose life [had] been lost in order to humanize the proceedings'" (citation omitted). Id. at 566. In any case, the judge's instruction to the jury that they should not decide the case based on sympathy and that closing arguments were not evidence sufficiently limited any potential prejudice to the defendant. [Note 6] See Commonwealth v. 

 Page 481 

Andre, 484 Mass. 403, 419 (2020).

 Judgments affirmed.

FOOTNOTES
[Note 1] The Commonwealth filed a motion to dismiss the indictment charging mayhem prior to closing argument, which was allowed. 

[Note 2] Under Susi, 394 Mass. at 789, a trial judge's erroneous refusal to excuse a juror for cause that results in the denial of a defendant's right to exercise a proper peremptory challenge entitles the defendant to a new trial. 

[Note 3] Conversely, we note that a trial judge could determine that unequivocal words used by a prospective juror, in fact, constitute an equivocal response, if the juror's tone, hesitancy, demeanor, or body language conveyed uncertainty. 

[Note 4] Though some cases have analyzed the admissibility of evidence in separate trials reciprocally, see, e.g., Commonwealth v. Wilkerson, 486 Mass. 159, 176 (2020), the defendant makes no argument in this appeal that joinder is proper only if the murder-related evidence would have been admissible in a separate sex trafficking trial. 

[Note 5] We discern no merit in the defendant's additional claim that he was entitled to an instruction on assault with intent to kill for the same reason, i.e., insufficient evidence. See Commonwealth v. Walden, 380 Mass. 724, 728 (1980). 

[Note 6] The defendant additionally challenges the admission of his prescription records from Eaton Apothecary (Eaton), introduced as a business record through a CVS Pharmacy (CVS) district manager, on a different ground from that raised at trial. On appeal, he contends that there was no showing that CVS incorporated and relied on Eaton's records after the two companies merged. We discern no error in admitting the records, as the district manager testified that he had access to and was responsible for maintaining Eaton's records after the merger, and former Eaton patients had to "transfer their prescriptions to the CVS system," implying CVS's reliance on Eaton's records. See Beal Bank, SSB v. Eurich, 444 Mass. 813, 816-818 (2005). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.