NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-144

COMMONWEALTH

vs.

AARON GUERRERO CANTU.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions, after a jury trial, of assault and battery on a family or household member (ABFHM), G. L. c. 265, § 13M (a), assault and battery with a dangerous weapon (ABDW), G. L. c. 265, § 15A (b), and violation of a c. 209A abuse prevention order, G. L. c. 209A, § 7.  He raises two issues on appeal.  First, he contends that the judge abused her discretion by joining the charges, which were the subject of two separate complaints, for trial.  Second, he argues that factual misstatements and impermissible rhetoric in the prosecutor's closing argument resulted in a substantial risk of a miscarriage of justice.  We affirm.

Background.  We recount the facts as the jury could have found them, reserving certain details for later discussion.  See Commonwealth v. Santana, 101 Mass. App. Ct. 690, 691 (2022).

In October 2021, the victim suspected that her husband, the defendant, was engaged in an extramarital affair. On February 7, 2022, the defendant and the victim, who shared a home, got into a heated altercation about the matter. The defendant left the house and drove to a Home Depot parking lot. The victim followed in a separate car. When the victim arrived at the parking lot, the argument continued, with the defendant remaining in his car while the victim stood outside it. At some point, the victim reached her arm through the driver's side window so that the defendant would not close it. The defendant then closed the window on her arm twice, leaving two marks on her arm. As the argument continued, the defendant got out of his car and tried to force the victim into his car. The defendant pulled and pushed the victim and threw her to the ground. The victim was afraid of the defendant, but she did not leave because she wanted answers.

Eventually, the victim got into the passenger's seat of the defendant's car. The couple drove away, but the argument continued. On the way home, the defendant stopped the car, and the victim got out. Once again, the defendant tried to force the victim back into the car, and he tried to take her cell phone away from her. The defendant pushed the victim, who hit her head against a wooden post. When the victim yelled at a passing driver for help, the defendant drove away. The victim

2

then walked home, which took about an hour and a half.  The victim did not report this incident to the police immediately, but she took photos of her injuries the next day.

On March 7, 2022, the victim went to the police station to report the February 7 incident.  On March 8, 2022, the defendant was charged in a complaint with four counts of ABFHM, two counts of ABDW, and one count of threatening to commit a crime.  After pleading not guilty, the defendant was released pending trial.

On March 18, 2022, following a hearing at which the defendant was present, the victim was granted a c. 209A restraining order.  On March 23, 2022, the victim went to retrieve items from a car she owned with the defendant.  The defendant arrived and, rather than remove himself from the zone around the victim, he videotaped the victim and laughed at her.  She reported the incident to the police, who arrested the defendant.  On March 28, 2022, the defendant was charged in a new complaint with two counts of violating the c. 209A restraining order.

At the Commonwealth's request, the trial judge joined the two complaints for trial.  The defendant was ultimately found guilty of one count of ABFHM, one count of ABDW, and one count of violating the 209A Order.  This appeal followed.

Discussion.  The defendant argues that the trial judge abused her discretion when she allowed the complaints to be

3

joined for trial over the defendant's objection.  More
specifically, he argues that the charges in the two complaints
were unrelated both because they arose from separate incidents
that took place about six and one-half weeks apart and because
the nature of the crimes was different (assault charges compared
to c. 209A violations).  In addition, the defendant argues that
joinder of the complaints resulted in the jury hearing evidence
from one case that would otherwise have been inadmissible in the
other.  He argues that, had the complaints been tried
separately, the jury would not have heard evidence that a
c. 209A order issued after the incident in the Home Depot
parking lot, and that admission of that evidence gave the
appearance that a judge had credited the victim's allegations
concerning that incident.[1]

A judge's discretionary determination to join complaints
"will be reversed only if there has been a clear abuse of
discretion."  Commonwealth v. Allison, 434 Mass. 670, 679
(2001), citing Mass. R. Crim. P. 9 (a) (3), (d) (2), 378 Mass.
859 (1979).  An abuse of discretion occurs if "the judge made a
clear error of judgment in weighing the factors relevant to the
decision such that the decision falls outside the range of
reasonable alternatives" (quotation and citations omitted).

---

[1] The trial judge correctly identified this as a potential
concern.

4

L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). "To show an abuse of discretion the defendant must demonstrate that joinder resulted in prejudice or that his substantive rights have been adversely affected." Allison, supra, citing Commonwealth v. Sylvester, 388 Mass. 749 (1983).

Rule 9 of the Massachusetts Rules of Criminal Procedure provides that a "[t]rial judge shall join [two or more related] charges for trial unless [the judge] determines that joinder is not in the best interests of justice." Mass. R. Crim. P. 9 (a) (3). Offenses are related "if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass. R. Crim. P. 9 (a) (1). "The defendant bears the burden of demonstrating that the offenses were unrelated." Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005), citing Commonwealth v. Wilson, 427 Mass. 336, 346 (1998).

Here, the two complaints were based on incidents that took place only six and one-half weeks apart and involved the same victim. Much of the evidence concerning the first episode would have been admissible at a separate trial on the second complaint because it bore on the relationship between the parties and the defendant's state of mind. See Commonwealth v. Delaney, 425 Mass. 587, 594 (1997), cert. denied 522 U.S. 1058 (1998)

5

("Indeed, if the charges were tried separately, much testimony would be duplicated at each trial merely establishing the relationship between the victim and the defendant").  See also Commonwealth v. Hoppin, 387 Mass. 25, 32 (1982) ("joinder may promote economy in the trial of criminal offenses, particularly when the same witnesses will testify concerning more than one offense").

As the defendant points out, evidence of the issuance of the c. 209A order and its violation would not necessarily have been admissible in a separate trial on the charges contained in the first complaint.  But even were we to assume that, on this basis, the complaints should not have been joined for trial, the defendant has not shown prejudice from the joinder because it did not require him to forgo any theory of defense and he was acquitted of five of the seven charges charged in the first complaint.  We are satisfied that the jury was not swayed by the joinder of the complaints and "carefully considered the evidence with regard to each crime charged."  Commonwealth v. Cash, 101 Mass. App. Ct. 473, 479 (2022), quoting Delaney, 425 Mass. at 595.

The defendant for the first time on appeal argues that the prosecutor made errors in her closing argument resulting in a substantial risk of a miscarriage of justice.  See Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022) (unpreserved

6

errors in closing argument reviewed for substantial risk of miscarriage of justice). An error during closing argument creates a substantial risk of a miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

The defendant contends that the prosecutor's closing contained several errors. He claims that the prosecutor impermissibly undermined the credibility of the defendant by using the phrase "half-truth" when describing the defendant's testimony and impermissibly vouched for the victim when using the phrase "full truth" to describe her testimony. See Commonwealth v. Ortega, 441 Mass. 170, 181 (2004). He argues that the prosecutor impermissibly aligned herself with the jury by repeatedly using the phrase "we know." See Commonwealth v. Burts, 68 Mass. App. Ct. 684, 688 (2007). Furthermore, he argues that the prosecutor misstated the evidence when she claimed that the victim screamed for help when the car window was rolled up on her arm, which the victim did not articulate in her testimony. See Commonwealth v. Mack, 482 Mass. 311, 322 (2019).

The closing should not have been structured around the prosecutor's analogy with something that occurred at a friend's

7

bachelorette party, and there were better ways to express that the victim's version of events was more complete than the defendant's than to use the construct of "full truth" and "half truth."  Moreover, the prosecutor should not have aligned herself with the jury or indicated her own personal belief about the victim's testimony by using the phrase "we know the full truth" or "I'm sure that's the truth" or "we know the truth."  Nonetheless, viewing the offensive comments "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial," they did not result in a substantial risk of a miscarriage of justice.  Allison, 434 Mass. at 687, quoting Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 231 (1992).  The judge repeatedly instructed the jury that arguments are not evidence, including during the final charge.  See Wilson, 427 Mass. at 351, quoting Commonwealth v. Santiago, 425 Mass. 491, 500 (1997).  In addition, the defendant was acquitted of five of the seven charges in the first complaint, as well as one of the two charges in the second complaint, indicating that the jury were not carried away by the prosecutor's rhetoric or her minor misstatement of the evidence.  See Commonwealth v. Howell, 49 Mass. App. Ct. 42, 48, quoting Commonwealth v. Alphas, 430 Mass. 8, 13 (1999) ("the jury's acquittal of the defendant on three indictments . . . persuades

8

us that the error did not 'materially influence[]' the guilty verdicts").

                                             <u>Judgments affirmed</u>.

                                             By the Court (Wolohojian, Neyman & Shin, JJ.[2]),

                                             Assistant Clerk

Entered:   January 25, 2024.

---

[2] The panelists are listed in order of seniority.