NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-332

COMMONWEALTH

vs.

JOSE LUIS MORALES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Jose Luis Morales, appeals from his conviction, after a jury trial in the Superior Court, of murder in the second degree, G. L. c. 265, § 1. We conclude that the trial judge's instructions on reasonable provocation and inferring malice from the use of a dangerous weapon were proper and that the trial judge acted within her discretion in denying the defendant's motion to reduce the verdict to manslaughter. Further concluding that the error in the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice, we affirm.

1. Background. In July 2016, the victim was driving down Main Street in Worcester when he was temporarily stopped by a

woman crossing the road in front of his vehicle. As the woman passed, the victim leaned out of his car window and said, "Hurry the fuck up, bitch, it's hot out here." The defendant, the woman's boyfriend, was standing on the sidewalk. The defendant stepped towards the street, shouted at the victim, and gestured at him. The victim drove a short distance, parked his vehicle, and walked in the direction of the defendant.

As the defendant approached, he handed his purse to his girlfriend and met the victim while holding a knife behind his back. The defendant and victim then engaged in a brief verbal exchange. One witness described seeing "[b]ack and forth motions" and "fighting physically." The video reveals that the exchange was very brief. At one point during the exchange, the victim raised his hands with his palms facing up in the air. The defendant promptly stabbed the victim in the chest. Immediately after the stabbing, the pair separated and the victim returned to his car and drove away. After driving a short distance, the victim parked his vehicle as he was unable to drive because of his wound. He was subsequently hospitalized and later died.

The defendant told a police officer that the victim "was talking shit to my baby mom, like, 'I'm going to shoot you in the eye,' so I poked him up." At trial, the defendant testified

2

that the victim threatened to kill him, and the defendant was afraid because of this threat.  He confirmed that he stabbed the victim.

After a trial in November 2021, at which the jury was instructed on self-defense and reasonable provocation, the jury convicted the defendant of murder in the second degree.  This appeal followed.

2.  Jury instructions.  a.  Reasonable provocation.  "When reviewing jury instructions, we evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words."  Commonwealth v. Maraj, 105 Mass. App. Ct. 258, 263 (2025), quoting Commonwealth v. Fan, 490 Mass. 433, 453 (2022).  "Trial judges have 'considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration.'" Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018), cert. denied, 587 U.S. 986 (2019), quoting Commonwealth v. Kelly, 470 Mass. 682, 688 (2015).  As there was no objection at trial, we review "to determine whether there was error, and, if so, whether the errors created a substantial risk of a miscarriage of justice."  Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 801 (2024), quoting Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 804 (2024).

3

As relevant here, the judge's instructions on reasonable provocation tracked the Supreme Judicial Court's Model Jury Instructions on Homicide 75-78 (2018).  See Commonwealth v. Howard, 479 Mass. 52, 61 (2018) ("judges should proceed with caution when deviating from our model jury instructions on homicide").  Accordingly, the judge instructed, "Mere words, no matter how insulting or abusive, do not ordinarily by themselves constitute reasonable provocation."  This is a well-established proposition of law.  See, e.g., Commonwealth v. Ronchi, 491 Mass. 284, 292 (2023); Commonwealth v. Garcia, 482 Mass. 408, 411 n.5 (2019); Commonwealth v. Gonzalez, 465 Mass. 672, 686 (2013).  It is true, as the defendant argues that threatening words, accompanied by action (such as an approach) may constitute reasonable provocation.  See Commonwealth v. Howard, supra ("On the other hand, in certain circumstances, words and gestures may combine to convey information that would constitute adequate provocation and would render an unlawful killing voluntary manslaughter").  But the instruction states that mere words "ordinarily" do not constitute reasonable provocation "by themselves."  Nothing in the instruction negated the possibility that words combined with other factors could constitute reasonable provocation.

4

Also following the model instructions, the judge instructed that "provocation must be such that a reasonable person would have become incapable of reflection or restraint."  This, too, is an established proposition.  See, e.g., Commonwealth v. Steeves, 490 Mass. 270, 292 (2022); Commonwealth v. Brea, 488 Mass. 150, 156 (2021).  The defendant argues that requiring "absolute incapacity" or "total incapacity" is too high a standard.  Neither the judge nor the model jury instruction used either phrase, however, but rather hewed to the judicially-approved "incapable."

The judge also used the phrase "reasonable person" in instructing the jury that reasonable provocation must "be likely to produce such a state of passion, anger, fear, fright, or nervous excitement in a reasonable person as would overwhelm his capacity for reflection or restraint."  Again, the "reasonable person" test for provocation is well-established.  See, e.g., Commonwealth v. Gamboa, 490 Mass. 294, 310 (2022); Steeves, 490 Mass. at 291; Commonwealth v. Cash, 101 Mass. App. Ct. 473, 479 (2022).

The defendant argues that, based on cases recognizing the lateness of adolescent brain development, the "reasonable person" standard must be modified for a nineteen year old defendant with a learning disability.  The Supreme Judicial

Court, however, has explained that its "differential treatment of juvenile offenders . . . has been limited to sentencing and does not extend to a juvenile's capacity to formulate an intent to commit murder." Commonwealth v. Chism, 495 Mass. 358, 394-395 (2025). The court has further "decline[d] . . . to 'except juveniles generally from application of our usual jury instructions.'" Id. at 395, quoting Commonwealth v. Odgren, 483 Mass. 41, 48 (2019). Similarly, the Supreme Judicial Court has rejected the proposition that the "reasonable person" test should be relaxed for persons suffering from mental impairment. See Commonwealth v. Benjamin, 430 Mass. 673, 680-681 (2000). Accordingly, the judge properly instructed the jury on reasonable provocation using the model instructions.

b. Inference from the use of a dangerous weapon. The judge instructed, "As a general rule, you are permitted, but not required to infer that a person who intentionally uses a dangerous weapon on another person" acts with malice. "Because the defendant raised a timely objection to the judge's instruction to the jury, we review his claim for prejudicial error." Commonwealth v. Allen, 474 Mass. 162, 168 (2016).

"As a general rule, the jury are permitted to infer an intent to kill from the use of a dangerous weapon." Commonwealth v. Colas, 486 Mass. 831, 842 (2021). This

6

principle is "frequently cited with approval in our cases, including those where there is evidence of intoxication or mental impairment on the part of the defendant." Odgren, 483 Mass. at 47, quoting Commonwealth v. Miller, 457 Mass. 69, 74 (2010). "[B]efore instructing on such an inference, the judge had to determine from the evidence at trial that 'the nature of the dangerous weapon used and the manner of its use reasonably supports' the inference." Commonwealth v. Toolan, 490 Mass. 698, 711-712 (2022), quoting Model Jury Instructions on Homicide 92 (2013).[1]

Here, prior to giving the instruction, the trial judge heard from both parties and reviewed the model instructions and the case law before deciding that the inference was permissible. We discern no error. The jury could find, based on the testimony and the video evidence, that the defendant took out a knife, placed it behind his back, walked up to the victim whose hands were raised, and immediately stabbed him in the chest with a knife. There is nothing unreasonable about inferring malice from the use of a dangerous weapon on those facts. See

---

[1] The 2018 Model Jury Instructions on Homicide, those used in the present case, incorporate the same phrase cited in the 2013 model jury instructions. See Model Jury Instructions on Homicide 105-106 (2018).

Commonwealth v. Concepcion, 487 Mass. 77, 79-80, 90, cert. denied, 142 S. Ct. 408 (2021).

The defendant's repetition of the arguments against this instruction advanced in Toolan is unavailing, as we are bound by the Supreme Judicial Court's decision to continue using the instruction where supported by the evidence. 490 Mass. at 712-713. As the court pointed out, "the instruction on the inference that may be drawn does not direct the jury to make such an inference." Id. at 713. Accordingly, the trial judge properly gave this instruction.

3. Closing argument. "A prosecutor may not 'misstate the evidence or refer to facts not in evidence,' and may not play 'on the jury's sympathy or emotions, or comment on the consequences of a verdict.'" Commonwealth v. Rivera, 482 Mass. 259, 269-270 (2019), quoting Commonwealth v. Carriere, 470 Mass. 1, 19 (2014). "[A] prosecutor may argue zealously in support of inferences favorable to the Commonwealth's case that reasonably may be drawn from the evidence." Commonwealth v. Grier, 490 Mass. 455, 472 (2022), quoting Carriere, supra at 22. "Because the line separating speculation and inference is often a fine one, 'we must and do recognize that closing argument is identified as argument.'" Commonwealth v. Mattei, 90 Mass. App. Ct. 577, 582 (2016), quoting Commonwealth v. Bresilla, 470 Mass.

422, 437-438 (2015).  We review the prosecutor's remarks "in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial." Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022), quoting Commonwealth v. Braley, 449 Mass. 316, 328 (2007). "Because the defendant did not object to the portions of the prosecutor's closing argument he now challenges, we must determine whether any such errors created a substantial risk of a miscarriage of justice."  Commonwealth v. Ortega, 441 Mass. 170, 180 (2004).

The defendant testified that the victim threatened him after the victim left his vehicle.  Later, when reciting the defendant's testimony in his closing argument, the prosecutor incorrectly stated that the defendant "allegedly said [the victim] was going to kill him; but he couldn't tell you when [the victim] said this."  Immediately after this inaccuracy, however, the prosecutor continued, "Did [the victim] say he was going to kill [the defendant] when his arms will raise like this?  If you're going to believe the testimony that [the victim] said he was going to kill [the defendant], that's the only point it could have been, because as soon as [the defendant] approached him, he stabbed him in the heart."

The prosecutor's error did not create a substantial risk of a miscarriage of justice.  Although the prosecutor initially misstated the defendant's testimony, he immediately corrected his mistake by properly citing the testimony and clarifying the sequence of events supported by the defendant's testimony.  See Sanders, 101 Mass. App. Ct. at 511 (statement clarified by immediate explanation).  Moreover, the brief misstatement occurred once during the prosecutor's eight page closing argument and did not garner an objection.  Commonwealth v. Salazar, 481 Mass. 105, 118 (2018) ("a brief, isolated statement in [a] closing argument . . . was not egregious enough to infect the whole of the trial").  Finally, the trial judge properly instructed the jury that closing arguments are not considered evidence and that their memory controlled.  See Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015) ("The jury are presumed to follow instructions").  Accordingly, the prosecutor's error did not create a substantial risk of a miscarriage of justice.

5.  Failure to reduce the verdict.  "Pursuant to rule 25 (b) (2), a trial judge has the authority to reduce a verdict, despite the presence of evidence sufficient to support the jury's original verdict."  Commonwealth v. Lyons, 444 Mass. 289, 291 (2005), quoting Commonwealth v. Rolon, 438 Mass. 808, 820 (2003).  "This authority is exercised properly 'where the weight

of the evidence in the case, although technically sufficient to support the jury's verdict, points to a lesser crime.'" Commonwealth v. Sanchez, 485 Mass. 491, 504 (2020), quoting Rolon, supra at 821. "Because rule 25 (b) (2) vests in a judge the power to undo the work of the jury, this postconviction authority 'should be exercised only sparingly.'" Commonwealth v. Pfeiffer, 492 Mass. 440, 446 (2023). "We review a judge's decision not to reduce a verdict under Mass. R. Crim. P. 25 (b) (2) for abuse of discretion." Commonwealth v. Reavis, 465 Mass. 875, 891 (2013). See Mass. R. Crim. P. 25 (b), as amended, 420 Mass. 1502 (1995).

Given the evidence at trial, the judge acted within her discretion in denying the defendant's motion to reduce the verdict to manslaughter. The defendant met the victim's approach while wielding a knife and almost immediately stabbed the victim in the chest. Although it is undisputed that the victim rudely addressed the defendant's girlfriend, only the defendant stated that the victim threatened him, and two witnesses described the victim as holding his hands in the air. The judge could reasonably conclude that the weight of the evidence supported the verdict. Cf. Commonwealth v. Chhim, 447 Mass. 370, 381 (2006), quoting Rolon, 438 Mass. at 821 ("where the weight of the evidence suggests that the defendant did not

11

act with malice, a murder verdict may be reduced to manslaughter").[2]

Judgment affirmed.

By the Court (Neyman,
Ditkoff & Wood, JJ.[3]),

*Paul Little*

Clerk

Entered:  March 25, 2025.

---

[2] The judge did not have the benefit of the aid in sentencing evaluation when she denied the defendant's motion. We note that the judge at sentencing remarked that the defendant's age, childhood, and mental health issues were "important factors . . . to consider."  Nothing in our decision should be taken as preventing the judge from entertaining a new motion to reduce the verdict based on the helpful information provided in the evaluation.  Of course, we express no view as to the merits of such a motion.

[3] The panelists are listed in order of seniority.